# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| OSCAR CASCO, individually and on behalf of all others similarly situated; | : : |
| | : Civil Action Docket No. |
| | : 1:16-cv-02084-RBK-JS |
| Plaintiff(s), | : |
| | : |
| vs. | : |
| | : |
| PONZIOS RD, INC. d/b/a METRO DINER; and Doe Defendants 1-10,, | : |
| | : |
| | : |
| Defendant(s). | : |

_____

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR SUMMARY JUDGMENT

_____

CAPEHART & SCATCHARD, P.A.
A Professional Corporation
Laurel Corporate Center, Suite 300
8000 Midlantic Drive
Mount Laurel, NJ 08054
(856) 234-6800
Attorneys for Defendant, Ponzios Rd., Inc.
d/b/a Metro Diner
RSmith@capehart.com

On the Brief:
Ralph R. Smith, 3rd, Esq.

Dated:   July 1, 2019

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ii

INTRODUCTION .......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

     I.     AN OVERVIEW OF PLAINTIFFS' WORK HISTORIES WITH METRO DINER. ............................................................................................. 2

     II.    PROCESSING OF TIPS AT THE METRO DINER. ............................ 12

     III.   MEALS ............................................................................................... 15

LEGAL ARGUMENT ................................................................................................ 15

     I.     THE SUMMARY JUDGMENT STANDARD. ...................................... 15

     II.    Metro Did Not Violate the NJWHL ...................................................... 16

     III.   DEFENDANT'S MEAL CREDITS WERE REASONABLE ................. 20

CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

## CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)...........................................16

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...............................................................16

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ..............16

## STATUTES

N.J.A.C 12:56-8.1(b)......................................................................................................20

N.J.A.C. 12:56-14.2 .......................................................................................................17

N.J.A.C. 12:56-14.4(b)...................................................................................................18

N.J.A.C. 12:56-8.3 ................................................................................................... 18, 20

N.J.A.C. 12:56-8.4 .........................................................................................................18

## RULES

Fed. R. Civ. P. 56(c)......................................................................................................15

Fed. R. Civ. P. 56(e)......................................................................................................16

6924863

## INTRODUCTION

Defendant Ponzios RD, Inc. d/b/a Metro Diner ("Defendant," or "Metro Diner") submits this brief in opposition to the motion for summary judgment filed by Plaintiff Oscar Casco ("Casco") and Opt In Plaintiff Tina Blemings ("Blemings") regarding their claims under the New Jersey Wage and Hour Law ("NJWHL").

For a variety of reasons to be outlined in greater detail below, Plaintiffs' motion for summary judgment should now be denied. Primary amongst these reasons is the fact that there is a disputed issue of material fact regarding whether the Plaintiffs and the putative class that they seek to represent in fact where indeed denied minimum wage payments by any claimed manipulation of records of tip income that the Plaintiffs received while working at the Metro Diner.

As two of the owners of the Metro Diner explained at their respective depositions in this matter, if there was any manipulation at all, it was being done by many members of the putative class of workers that refused to appropriately declare the tip income that was received on any given shift. A major problem that existed at the diner when it was in business was that servers would not honestly report their night's tips, despite being repeatedly advised by the diner's staff of the critical need to do so. In some instances, servers would actually report that they received no tips when separate records of customer credit card paid meals showed that such servers in fact received tips that they tried to not report at shift's end. To combat this problem, Defendant advised its servers as part of its tip notice documentation that the maximum tip credit needed to reach the hourly minimum wage would be taken *unless the employee specifically advised management that insufficient tips were received to do so.* As explained by Defendants'

1

6924863

deposed representatives here, at no time did any of the server staff (including Blemings) at the Metro Diner ever complain to management that they were not receiving the sufficient amount of tips to reach the required minimum wage.  Alternatively, those few bussers who did complain about tip shortages were immediately paid at the end of their shift from the diner's register to ensure that all minimum wage requirements were met.

By virtue of the foregoing testimony, a genuine issue of disputed material fact is created regarding whether employees in fact failed to receive the required minimum wage compensation under the NJWHL, and as a result, the instant summary judgment motion seeking a declaration in favor of Plaintiffs' claims under the NJWHL should now be denied.

## STATEMENT OF FACTS

### I.   AN OVERVIEW OF PLAINTIFFS' WORK HISTORIES WITH METRO DINER[1]

**Plaintiff Oscar Casco**

Plaintiff, Oscar Casco ("Casco"), was employed by the Metro Diner as a busser. Exhibit A, Deposition Transcript of Oscar Casco, 10:23-25; 23:1-7.  Casco was only employed for a very short period of time, approximately six months.  Id. at 83:15-24. Casco's hourly rate for work at Metro Diner was $3.50 per hour.  Id. at 54:14-15.

**Opt In Plaintiff, Tina Blemings**

Opt in Plaintiff, Tina Blemings ("Blemings") was employed at the Metro Diner for approximately four years beginning in May 2011.  Exhibit B, Deposition Transcript of Tina Blemings, 26:1-5.  Although Plaintiff claims her employment ended in June 2015 (Id. at 26:6-8), Defendant's records indicate that Bleming's employment actually ended

---

[1] The Metro Diner has ceased operations and is no longer in business.

6924863

in August 2015.   See Exhibit C.   Blemings was hired as a server, although she occasionally worked shifts as a hostess.  Exhibit B, at 26:9-13.  Blemings testified that her hourly rate as a hostess was $9.00 or $10.00 per hour[2].  Id. at 28:18-20.  Blemings does not believe she worked at Metro Diner during the same time period as Casco.  Id. at 21:1-3.

*TIP CREDIT*

**Plaintiff Oscar Casco**

Along with receiving an hourly wage, both Casco and Blemings received tip income for performing employment services for the Defendant.

Casco indicated that he was advised by another employee that he would get paid from tips received from the waitresses.  Exhibit A at 54:20-23.  For the first two weeks that Casco worked at Metro Diner, he received his tips from someone in management. Id. at 55:14-20.  However, after those two weeks, Casco contends he began receiving his tips directly from the waitresses.  Id. at 55:20-22.

Casco admitted to having received, and signed on October 6, 2015, a document entitled "Notice to Tipped Employees."   Id. at 58:25-60:25, Exhibit D.  The document states specifically:

The following is from IRS Publication 531.

> All tips you receive are income and are subject to federal income tax.  You must include in gross income all tips you receive directly, charged tips paid to you by your employer, and your share of any tips you receive under a tip-splitting or tip-pooling arrangement.

---

[2] Blemings testified during her deposition that she is not claiming any failure to be paid for her hostessing hours.  Exhibit B, at 30:12-15.  Nor is she claiming that Metro Diner failed to pay her minimum wage for her hostessing hours.  Id. at 30:16-31:1.

6924863

The value of noncash tips, such as tickets, passes or other items of value are also income and subject to tax.

Reporting your tip income is not difficult.  You must do three things:

1.        Keep a daily tip record.
2.        Report tips to your employer.
3.        Report all your tips on your income tax return.

Ponzio's Rd Inc. dba Metro Diner is required to report gross sales to the IRS.  The IRS defines [sic] the food & beverage, golf and hotel services provide at this report as those typically include tipped employees.  The IRS compares the tips reported to a percentage of the gross sales to determine if the amounts being reported are reasonable.

Ponzio's Rd Inc. dba Metro Diner will record and tax all credit card tips and contracted gratuities assigned by yourself or your supervisor.  **You are responsible for reporting 100% of your cash tips.**  This must be done daily as required by the IRS.

***Why do I have to report my cash tips?***  It's the law!!  Tip income adds up.  There are positive benefits such as increase of income may improve financing approval when applying for larger loan amounts (mortgage, car, and other loans); increased worker's compensation benefits, should you get hurt on the job; increased unemployment compensation benefits, increased social security and Medicare benefits (the more you pay, the greater your benefits) and the negative side is that underreporting could result in you owing substantial taxes, penalties and interest.

Your supervisor will explain the process for reporting all tips.  Remember to record this daily.  Additionally, you are strongly advised to maintain a daily "Tip Log" for yourself in the event of an audit.  IRS Publication 1244 has a sample you can use for this.  It can be found at http://www.irs.gov/pub/irs-pdf/p1244.pdf.

4

By signing below, I understand the above information and agree to report my cash tips at the end of each shift worked.

Exhibit D.

Casco was also asked at his deposition about another document entitled "METRO DINER Notice to Tipped Employee."  (Exhibit E).  The document states:

As a Tipped Employee (All Waitstaff/Servers and Buspersons/Bussers) and in accordance with the U.S. Department of Labor's Tip Credit Notice regulations, we are informing you of the following:

- The amount of cash wages to be paid to you per hour will be:

  $2.15 per hour for waitstaff/servers.

  $3.50 per hour for buspersons/bussers.

- It is your responsibility to declare/report all tips received.  Assuming you have received a sufficient amount of tips (at least the amount per hour reflected below), this amount will be the tip credit your employer, Ponzios RD Inc. t/a Metro Diner will take and credited to you as wages paid:

  $6.23 per hour for waitstaff/servers.

  $4.88 per hour for buspersons/bussers.

UNLESS WE ARE INFORMED OTHERWISE WE WILL ASSUME THAT AT THE VERY LEAST THE ABOVE NOTED TIP CREDIT AMOUNTS (no less) HAVE BEEN RECEIVED IN YOUR PAY WEEK AND WILL BE CREDITED TO YOU AS WAGES AND TAXED ACCORDING TO THE LAW.

- You have the right to retain all tips you receive, except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips, such as tip pooling arrangements between waitstaff/servers and buspersons/bussers.

5

6924863

- The tip credit noted shall not apply unless you have been informed of these requirements.

You are being provided this information in accordance with Section 203(M) of the Fair Labor Standards Act. Please sign and date this notice indicating that you understand it, and have no question regarding same or the tip credit and how it relates to your pay and return it to Management promptly.

If you have ANY questions regarding this notice, the tip credit described above and/or if you do not understand it, please contact Management (Gerry, George, Perry or Dimitrios Kolovos) at the Metro Diner RT 130 & Browning Rd, Brooklawn, NJ 08030

Id. Even though, to the naked eye, Casco's signature on this document looks strikingly like his signature on the other tip related document he actually admitted signing, Casco nonetheless testified that he did not believe he signed this document because he was not sure that the signature on the page matched his signature. Exhibit A at 74:14-75:17.

Casco testified further during his deposition that he was not aware whether other Metro Diner employees received the documents in Exhibits D and E. Exhibit A at 82:19-83:14. Casco likewise stated that he was not aware of what other employees were expressly told or given regarding the tip credit prior to his or their employment in February, 2015. Id. at 83:25-84:6. He further testified that he was not aware of what other employees were told or given regarding the tip credit after his employment ended in February 2016. Id. at 84:7-11. Casco similarly stated that he did not witness every conversation between Metro Diner management and other employees regarding the tip credit. Id. at 84:12-17, 84:1-10. Nor did Casco witness what documents other employees may have received and/or signed regarding the tip credit during his employment. Id. at 84:18-25, 85:1-10.

6

6924863

Nevertheless, despite admitting at his deposition that he did receive and <u>sign</u> the "Notice to Tipped Employees" (Exhibit D), Plaintiff's allegations in his Complaint contend that Metro Diner failed to satisfy the notice requirements of the tip credit provisions of the Fair Labor Standards Act ("FLSA") and New Jersey State Law.  Exhibit F, ¶3.  Specifically, Casco alleged in ¶45 of his Complaint that:

> Rather than comply with the notification requirements set forth in Fact Sheet #15, Defendant chose to simply pay its Tipped Employees between $2.13 and $3.50 per hour.  In short, Defendant failed to inform its Tipped Employees of (i) their intention to take the tip credit, and (ii) the amount Defendant intended to claim as a tip credit.

Moreover, Casco further mistakenly claims in ¶47 of his Complaint that:

> Indeed, Plaintiff does not ever recall being notified by Defendant that it intended to take a "tip credit," nor how much that amount would be.  Evincing the magnitude of Defendant's abject failure to notify Tipped Employees of its intention to take a tip credit, until recently, Plaintiff never heard the term "tip credit."

Casco's deposition testimony clearly contradicts the allegations he has made in his Complaint regarding his purported lack of knowledge about a tip credit while employed by Defendant.

**<u>Opt In Plaintiff Tina Blemings</u>**

***TIP CREDIT***

Like Casco, any contention that Blemings was not informed by the Metro Diner under the NJWHL about it taking a tip credit towards her compensation cannot be the subject of any serious dispute.

During Blemings' employment with Metro Diner, the waitress staff was required to fill out a form advising management as to the amount of tips that they received on a

6924863

particular shift, and then later that notification requirement was fulfilled through inputting the information into a work computer.  Exhibit B, at 39:15-19.  Plaintiff also noted at her deposition that, during the time period of her employment with Metro Diner, there were instances when she would directly pay the bussers their portion of tips and, at other times, she would turn over the money to management, who would then pay out tips to the bussers.  Id. at 36:7-18.  With regards to the hourly rate of other employees, Blemings testified that she did not know what every waitress was paid in terms of their hourly rate or what other waitresses or bussers may have been told about the employer's taking of any tip credit.  Id. at 90:3-5.

Like Casco, Blemings was asked whether she had ever been notified regarding the tip credit.  She indicated that she did not recall ever being given any information regarding the tip credit.  Id. at 100:3-12.  Blemings was shown a document entitled "Notice to Tipped Employee" dated May 24, 2012.  Exhibit G.  The document appears to have Bleming's signature upon it.  The document states similar to the one that Casco likewise signed that:

> As a Tipped Employee (All Waitstaff/Servers and Buspersons/Bussers) and in accordance with the U.S. Department of Labor's Tip Credit Notice regulations, we are informing you of the following:
>
> • The amount of cash wages to be paid to you per hour will be:
>
> $2.15 per hour for waitstaff/servers.
>
> $3.50 per hour for buspersons/bussers.
>
> • It is your responsibility to declare/report all tips received.  Assuming you have received a sufficient amount of tips (at least the amount per hour reflected below), this amount will be the tip credit your employer,

Ponzios RD Inc. t/a Metro Diner will take and credited to you as wages paid:

> $5.12 per hour for waitstaff/servers.

> $3.75 per hour for buspersons/bussers.

UNLESS WE ARE INFORMED OTHERWISE WE WILL ASSUME THAT AT THE VERY LEAST THE ABOVE NOTED TIP CREDIT AMOUNTS (no less) HAVE BEEN RECEIVED IN YOUR PAY WEEK AND WILL BE CREDITED TO YOU AS WAGES AND TAXED ACCORDING TO THE LAW.

- You have the right to retain all tips you receive, except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips, such as tip pooling arrangements between waitstaff/servers and buspersons/bussers.

- The tip credit noted shall not apply unless you have been informed of these requirements.

You are being provided this information in accordance with Section 203(M) of the Fair Labor Standards Act. Please sign and date this notice indicating that you understand it, and have no question regarding same or the tip credit and how it relates to your pay and return it to Management promptly.

If you have ANY questions regarding this notice, the tip credit described above and/or if you do not understand it, please contact Management (Gerry, George, Perry or Dimitrios Kolovos) at the Metro Diner RT 130 & Browning Rd, Brooklawn, NJ 08030

Amazingly, in regards to a document that clearly refutes the contentions she now makes here about her lack of knowledge about Metro Diner's taking of a tip credit, Blemings conveniently testified that she did not believe the signature on Exhibit G was hers. Exhibit B at 101:5-20.

Furthermore, like Casco, Blemings indicated that she did not know whether other waitresses or other tipped employees were provided a similar document. Id. at 104:3-7. She likewise noted that she did not know what other tipped employees were told with regards to the tip credit, although she and Casco now claim that such employees are similarly situated to them when they simply have no idea what was communicated to such employees about the taking of a tip credit. Id. at 104:8-12.

Blemings was also shown a second document entitled "Notice to Tipped Employee" dated October 5, 2013. This document states (like the one that Casco ostensibly signed) that:

> As a Tipped Employee (All Waitstaff/Servers and Buspersons/Bussers) and in accordance with the U.S. Department of Labor's Tip Credit Notice regulations, we are informing you of the following:
>
> •   The amount of cash wages to be paid to you per hour will be:
>
>> $2.15 per hour for waitstaff/servers.
>>
>> $3.50 per hour for buspersons/bussers.
>
> •   It is your responsibility to declare/report all tips received.   Assuming you have received a sufficient amount of tips (at least the amount per hour reflected below), this amount will be the tip credit your employer, Ponzios RD Inc. t/a Metro Diner will take and credited to you as wages paid:
>
>> $6.23 per hour for waitstaff/servers.
>>
>> $4.88 per hour for buspersons/bussers.
>
> UNLESS WE ARE INFORMED OTHERWISE WE WILL ASSUME THAT AT THE VERY LEAST THE ABOVE NOTED TIP CREDIT AMOUNTS (no less) HAVE BEEN RECEIVED IN YOUR PAY WEEK AND

WILL BE CREDITED TO YOU AS WAGES AND TAXED ACCORDING TO THE LAW.

• You have the right to retain all tips you receive, except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips, such as tip pooling arrangements between waitstaff/servers and buspersons/bussers.

• The tip credit noted shall not apply unless you have been informed of these requirements.

You are being provided this information in accordance with Section 203(M) of the Fair Labor Standards Act. Please sign and date this notice indicating that you understand it, and have no question regarding same or the tip credit and how it relates to your pay and return it to Management promptly.

If you have ANY questions regarding this notice, the tip credit described above and/or if you do not understand it, please contact Management (Gerry, George, Perry or Dimitrios Kolovos) at the Metro Diner RT 130 & Browning Rd, Brooklawn, NJ 08030

Exhibit H.   Again, despite a signature on the document appearing to be Blemings (when compared to other documents she signed) she nonetheless disputes that the document has her signature on it.  Exhibit B at 108:1-4.  Blemings also indicated (quite conveniently once more given the impact that this notice would have on her claims here) that she did not recall signing any such document.  Ibid.

Along with receiving the enclosed Tip Notices, tipped employees at the Metro Diner similarly received oral notification of the statutory and regulatory requirements for taking a tip credit from members of the diner's staff, and a very copy of the notices signed by Plaintiff was also posted in the diner with all other required federal and state labor and employment law notices. (See Exhibit A, Plaintiff's Motion, Deposition of Dimitri Kolovos, Tp. 57:20-58:4; 59:6-20; 69:1—11; 152:13-153:13; Deposition of

6924863

George Fakouras, Exhibit I, Tp. 20:23-22:17).   Moreover, as Kolovos stated at his deposition, he would likewise go over these very same topics orally with the tipped staff to highlight what had already been explained in writing to them in the notices about the tip credit. Id.

## II.    PROCESSING OF TIPS AT THE METRO DINER.

As mentioned above, when Casco worked at the Metro Diner, bussers received their tips at the end of their shifts directly from the servers.   That process subsequently changed, and bussers received their tips directly from management.   (See Ex F, Plaintiff's Motion, Fakouras Tp. 25: 20-26:5; 28:23-29:21; 30:6-30:10; 34:8-34:13, 52: 11-15; Ex. A, Plaintiff's Motion, Kolovos Tp. 97:16-97:20; 100: 11-100:17; 115:20-116:8; 116: 10-116:12; 118:23-120:1;170:18-171:5.)

Servers, on the other hand, including Blemings, were responsible for entering their cash tips into Defendant's POS system prior to clocking out at the end of their shift. Ex. A, Plaintiff's Motion, Kolovos Tp. 69:13-69:21; 76:19-77.3.   Credit card tips if any were distributed to servers also at the end of their shifts.   (Exhibit I, Fakouras Tp. 58:1-15)   However, as both Kolovos and Fakouras, each co-owners of the Metro Diner, explained at their respective depositions, servers frequently did not honestly report the true amount of tips they received into the system, despite being informed on numerous occasions both verbally and in writing that it was critical that servers accurately declare and report all received tips. (Exhibit I, Deposition of Gorgios Fakouras Tp. 54:57:14; 58:1-18:59; 58:18-64:13; Exhibit J, Deposition of Dimitri Kolovos, Tp. 62:23-63-15; 168:2-169:11)   As explained by Fakouras at his deposition, when asked questions about certain "zero" tips that were declared by servers, he stated that it simply could not have

6924863

happened, and as tipped employees were informed, the diner would report in such circumstances the maximum amount of tips needed to reach the minimum wage level, absent notification from the server that insufficient tips were received to take such a tip credit:

> Q.    Well, it's just that if a server enters zero cash tips for a pay period, how can they have made minimum wages for that week?
>
> A.    Well they were informed about how the tip credit works, so, if they are not making – – if they're making zero, which there's – – again, there is no possibility for a girl to make zero money,  say for this one, she has like $1,337 in sales, it means she just didn't put it in, and since she didn't came [sic] to me or one of the managers to say I didn't make any money this day, and this is for the week, we – – we will go with the minimum, we will say she made the minimum.

(Fakouras, Exhibit I, Tp. 60:11-24.)   All tipped employees were informed about this practice in the tip credit notice provided at the time of their employment commencement. In the very tip notices that Defendant now submits were signed by these moving Plaintiffs, it states in bold letters and with unmistakable clarity:

> UNLESS WE ARE INFORMED OTHERWISE WE WILL ASSUME THAT AT THE VERY LEAST THE ABOVE NOTED TIP CREDIT AMOUNTS (no less) HAVE BEEN RECEIVED IN YOUR PAY WEEK AND WILL BE CREDITED TO YOU AS WAGES AND TAXED ACCORDING TO THE LAW.

13

Exhibit E.  Faroukas further stated the following about the dilemma that was faced by the Metro Diner because of the dishonesty of its wait staff in regularly failing to accurately declare their received tips:

> We do the math we give the remaining, and show them to make the minimum, but not ever a single girl complain, I never heard a complaint from anyone, not even a single girl, that they didn't make minimum wage. And none of my managers ever say, they never came to me and they say, this waitress, this waiter, they didn't make enough today. Unfortunately, it's the opposite, they make more, way more than the minimal and they don't claim it. And, now, I'm in trouble, because they say, oh, she claims zero and that's the record.

(Fakouras, Exhibit I, Tp. 63-18-64:6.)

As shown by the above quoted deposition testimony, not once did any server complain that they failed to receive sufficient tip income to ensure that they received minimum wage for all hours they worked.  Id.   As for bussers, while some complaints were received, they were addressed immediately, and appropriate cash was taken out of the diner register and provided to the busser as a tip to ensure the meeting of minimum wage requirements for those shift hours worked.  (Fakouras, Exhibit I, Tp. 64:14-65:5.)

14

6924863

### III.     MEALS.

Along with being paid an hourly wage and tips, bussers and servers were given the ability to eat meals during their shift.  They were allowed to order anything off the menu.  A $10 meal credit to the gross weekly pay of each tipped employee was taken, which was prorated for each 40 hours worked by each tipped employee.  (Exhibit A, Plaintiff's Motion, Tp. 209:20-210:3.)  Employees wishing to take a meal would do so by following the below procedure described by Fakouras at his deposition:

> So, all the girls and the waiters, they have to put their order in for the food, right, so they have to create a check under their name, and they said I want a cheeseburger, whatever they want to have. When they come at the register with that slip and they say that's my meal and they sign it, the cashier open the slip on the register, it goes under the discount screen and the discounts says employee discount, so, they hit that button and then the $8 come off of the check. Usually, that covers the whole check.

(Exhibit I, Fakouras Tp. 66:6-18.)

## LEGAL ARGUMENT

### I.     THE SUMMARY JUDGMENT STANDARD.

Summary judgment may only be granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56 mandates that

15

summary judgment be entered against any party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party has the burden of initially demonstrating the absence of any genuine issue of material fact. Id. at 323. A factual dispute is "material" if it might affect the outcome of the case under the governing substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Moreover, an issue is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. If the moving party establishes the absence of a genuine issue of material fact, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In doing so, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Where the evidence of the non-moving party is "merely colorable," or is "not significantly probative," summary judgment should be granted. Anderson, 477 U.S. at 249-50.

As discussed below, when applying this summary judgment standard to the present motion, it becomes abundantly clear that Plaintiffs' request for partial summary judgment on their NJWHL claim should now be denied.

## II.   Metro Did Not Violate the NJWHL

Despite what Plaintiffs now contend, Defendant never improperly manipulated its payroll records, nor did it wrongly apply the tip credit by illegally assuming that tipped employees received sufficient tips to meet minimum wage requirements. As the notices that moving Plaintiffs ostensibly signed indicated, unless advised by an employee to the

16

contrary, management would take a sufficiently large enough tip credit in the amount specified in order to establish the payment of minimum wages. Significantly, at no time did any server employee ever claim in conjunction with their receipt of tips that they ever failed to be paid minimum wages for a particular shift that they worked. Moreover, in those limited situations where bussers received anything less than minimum wage, those complaints were immediately rectified by paying such employees cash from the diner's register as extra tip money in order to ensure the meeting of minimum wage requirements.

Given the nature of the problems that were encountered at the Metro Diner because of the dishonesty of certain members of its tipped staff in not accurately reporting their received tips, Defendant appropriately determined that adequate tips were received in the absence of employee complaints to the contrary, especially when it was common for certain servers to incredibly claim the receipt of no tip money at all when in fact sales records for a particular night (and records of receipt of credit card tips) indicated to the contrary. If such a practice as undertaken by Defendant were found to be improper under state wage and hour laws, an employer would be at the mercy of their tipped employees who could themselves increase the amount of their pay by simply lying about the tips they received on a particular shift. Such an interpretation of the requirements of the NJWHL, and its tip credit rules, would lead to this absurd result and regrettably defeat the whole purpose for recognizing and allowing for the use of a tip credit in the first place.

New Jersey Wage and Hour regulations require that all workers employed in the restaurant industry are to be paid minimum wage. N.J.A.C. 12:56-14.2. However, in

6924863

meeting such requirements, an employee in the food industry who is subject to the requirements of the Fair Labor Standards Act "can be paid a cash wage as little as $2.13 per hour" with the reminder of the hourly minimum wage be made up through the receipt of tip income.  N.J.A.C. 12:56-14.4(b).   "In determining the cash gratuities actually received by an employee," the employer can use statements "that are furnished by an employee to an employer" or "amounts indicated on" a customer's bill regarding gratuity or service charge. N.J.A.C. 12:56-8.3. New Jersey law further permits an employer to establish an average value of gratuities received "based upon a percentage of gross sales apportioned on basis of hours worked among" the tipped employee. N.J.A.C. 12:56-8.4. An "average value" can be established where there is (1) an agreement in advance with the employee regarding such calculation and (2) that the calculation is done based upon the actual amount received by the employee or is based on 10% of gross sales orders calculated on some other agreed-upon method that is approved by the commissioner. N.J.A.C. 12:56-8.4

According to the moving Plaintiffs, Defendant cannot meet the NJWHL standard for taking the maximum allowable tip credit as it related to their employment. This is simply not true. Defendant can easily demonstrate that Plaintiffs (along with all other members of its tip staff) received the requisite tips based upon the simple fact that a pair of diner owners have testified that such occurred each shift and, also because, after being placed on notice that unless otherwise told to the contrary about maximum tips not being received, not one single complaint was ever raised by servers that their pay was short in any fashion or that they failed to receive minimum wages.  Moreover, in regards to bussers, when a mere handful of complaints were in fact made, any shortages in pay were

6924863

immediately rectified by specific cash payments to the busser at the close of the shift showing the diner's commitment to meeting minimum wage requirements.   This is certainly sufficient to give rise to a disputed material fact on the issue of whether these employees were deprived of any payment of minimum wage.

Thus, it was logical to think that had server employees received less than what was required, they clearly would have complained, and it was reasonable for Defendant to structure its payroll practices accordingly.   At worst, the issues now raised by the moving Plaintiffs relating to the claimed manipulation of payroll records and adjusted tips raise issues of disputed material fact because of the unreliability of the amount of tips (and the records reflecting such tips) that were reported by servers, who, as described above, would frequently refuse to honestly declare the real amount of tips received during a given shift despite being told it was mandated by diner management.

Furthermore, while Plaintiffs may currently highlight the instances where the declaring of zero tips happened, there are numerous other instances in Defendant's payroll records where it is indicated that tips meeting the tip credit requirements were received per what was reported in the POS system by the wait staff themselves, and those should not be ignored in evaluating this motion. To the extent that Plaintiffs now contend that such records are somehow inaccurate, that too raises a disputed issue of material fact because the testimony of Defendants' witnesses adamantly now declare that the wait staff received the required minimum wage (as per the diner's payment records) except in those rare instances when complaints were expressly raised and where such instances were corrected. Thus, this very challenge to the accuracy of such records based upon any claim of manipulation of received tips raises a material factual dispute, and if anyone is to

19

determine that these records do not show what they purport to show concerning the payment of minimum wage, then that determination should be made by a jury at trial, not respectfully by this court on a motion for summary judgment.

Moreover, based upon the testimony provided from the defense witnesses, it is clear that a percentage of sales method (as referenced above) was used to some degree to calculate tips received when there was a suspicion of withheld tip information based upon an assessment of the amount of sales made by a given wait staff member, especially in those situations where a member of the wait staff incredibly claimed that they received no tips even in the face of credit card records that showed that in fact a tip was in fact provided.   Pursuant to N.J.A.C. 12:56-8.3, in determining cash gratuities actually received by an employee, amounts indicated on customer billing, credit card invoices or other customer charge accounts (wherein there is an indicated service charge or gratuity designated for the employee and payable to the employee) can be used in establishing the meeting of the tip credit. Id.  And, while Plaintiffs may now argue that there was no agreement, the Tip Credit notice provided to the employees which required a signature of the employee satisfied this agreement requirement because it told employees that reaching the required tip credit in receiving the appropriate tips on a given shift was viewed to be met unless the dinner was told to the contrary.  Therefore, there was no violation of the tip credit requirements under NJWHL.

## III.    DEFENDANT'S MEAL CREDITS WERE REASONABLE

Finally, the meal credits taken by Defendant were likewise reasonable and are not grounds for finding a violation of the NJWHL. Such reasonable cost of meals cannot be more than the actual cost N.J.A.C 12:56-8.1(b). As explained by Fakouras in his

6924863

testimony concerning how meals were provided to employees at the Metro Diner, and credits were provided for such meals, it is clear that this reasonableness standard has been met here, and these moving Plaintiffs have not shown in any way that the credits provided for such meals were excessive in any sort of way.

## **CONCLUSION**

Accordingly, for all the foregoing reasons, the instant application for summary judgment concerning Plaintiffs' NJWHL claim should respectfully be denied.

Respectfully Submitted;


*/s/ Ralph R. Smith, 3rd*
Ralph R. Smith, 3rd, Esq.
Attorney for Defendants


Dated:     July 1, 2019