NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CASCO, individually and on behalf of all others similarly situated, | : : : : |
| Plaintiff(s), | : : Civil No. 16-2084 (RBK/MJS) : |
| v. | : **OPINION** : : |
| PONZIOS RD, INC., *et al.*, | : : |
| Defendant(s). | : : : |

**KUGLER**, United States District Judge:

Presently before the Court is Plaintiffs' Motion for Reconsideration (Doc. No. 160). For the reasons set forth below, the Motion for Reconsideration is **DENIED.**

**I.     BACKGROUND**

This action arises out of an employment dispute concerning whether Defendant Ponzios RD, doing business as Metro Diner, could pay its "tipped employees," like bussers and servers, less than the minimum wage by using a "tip credit" under the New Jersey Wage and Hour Law ("NJWHL").

   a.  Factual Background

Defendant Metro Diner employed Lead Plaintiff Oscar Casco ("Casco") as a busser and Opt-In Plaintiff Tina Blemings ("Blemings") as a server in its New Jersey location in Brooklawn, New Jersey. (Doc. No. 105, Pls.' SMF at ¶¶ 1, 3, 4, 7). Casco worked for Defendants for approximately six months beginning in May 2014 and earned $3.50 per hour plus tips. (*Id.* at ¶ 4); *see also* (Doc. No. 1, Compl. at ¶ 27). Blemings, by contrast, worked for Defendants for

1

about four years beginning in May 2011 and earned $2.15 per hour plus tips. (Doc. No. 105, Pls.' SMF at ¶¶ 7, 8, 9). Metro Diner considered waitresses, waiters, and bussers as tipped employees and would credit as wages to these employees the difference between the minimum wage and their hourly wage. (Doc. No. 116, Ex. I at 37, 39–40).

Defendants provided all new hires with a form entitled "METRO DINER, Notice to Tipped Employee," which provided in pertinent part:

- The <u>amount of cash wages</u> to be paid to you per hour will be:

    $2.15 per hour for waitstaff/servers.
    $3.50 per hour for buspersons/bussers.

- <u>It is your responsibility to declare/report all tips received</u>. Assuming you have received a sufficient amount of tips (at least the amount per hour reflected below), this amount will be the tip credit your employer . . . will take and credit to you as wages paid:

    $6.23 per hour for waitstaff/servers.
    $4.88 per hour for buspersons/bussers.

(*Id.* at 21–22); (Defs.' SMF at ¶ 13). The Notice further informed tipped employees, in all capital letters, that:

> UNLESS WE ARE INFORMED OTHERWISE WE WILL ASSUME THAT AT THE VERY LEAST THE ABOVE NOTED TIP CREDIT AMOUNTS (no less) HAVE BEEN RECEIVED IN YOUR PAY WEEK AND WILL BE CREDITED TO YOU AS WAGES AND TAXED ACCORDING TO THE LAW.

(*Id.*)

Before clocking out at the end of each shift, waiters and waitresses were required to report their total tips—both cash and credit card tips—by entering the amount into a point of sale ("POS") system. (Doc. No. 116, Ex. J at 69, 93). After clocking out, the POS system generated a report which the waitresses and waiters would then take to the cashier to receive cash for the credit card tips. (*Id.* at 89, 101). The report broke down the credit card tips

earned by the waiters or waitresses along with the gross sales they made that day. (*Id.* at 101–102). Gross sales means the "total sales that [the] waiter or waitress [had] that day . . . like how much food she sell[s] and beverages." (Doc. No. 116, Ex. I at 30). A certain percentage of the waiter or waitresses' gross sales was deducted and distributed to the bussers as tips. (Doc. No. 116, Ex. J at 97, 103). The waiters and waitresses used to distribute the tips to the bussers directly before management took over this allocation process. (*Id.* at 70).

Because waiters and waitresses often allegedly failed to report their cash tips, Defendants assumed they received sufficient gratuities to meet the minimum wage requirement by recording such on payroll. (*Id.* at 63). Mr. Kolovos, a co-owner of Metro Diner, discussed how management records tips when employees report they earned zero cash tips:

> Counsel: Now, it says that she had $1,337.07 in gross receipts for food and beverage; do you see that?
>
> Mr. Kolovos: Yep.
>
> Counsel: And she had zero percent total tips?
>
> Mr. Kolovos: that's 'cause she didn't declare anything.
>
> Counsel: But the $41 –
>
> Mr. Kolovos: She did get $41 in – it appears in credit card tips that we paid her.
>
> Mr. Kolovos: But, again, see how this is difficult for me to police and say, hey, you didn't make any other tips, it's highly unlikely.
>
> Counsel: What does Mr. Fakouras do with the information in this document?
>
> Mr. Kolovos: Well some – some employees or wait staff, as you can see, do report their tips or what appears to be, you know, their tips. So he utilizes what they've— what tips they report here. If it is zero, for example, which is unreasonable, well, then, we – as indicated in the notice, the minimum—the minimum as put in.

> Counsel: And by the minimum – I'm sorry?
>
> Mr. Kolovos: as it indicated in the document, unless were told otherwise, we gonna at least take this tip credit.

(*Id.* at 95–96) Mr. Fakouras, also a co-owner, similarly testified in his deposition how he reports employees' tips on payroll when they record receiving zero cash tips:

> Counsel: Okay. So, if, just to close the loop in this, if a server puts down that they received zero in cash tips for the week, but they don't complain to you that they don't receive minimum wage, you send it to payroll as they received minimum wage?
>
> Mr. Fakouras: Correct.

(Doc. No. 116-11, Ex. I at 64).

Metro Diner also provided its employees with meal credits that were based on the retail cost of the food, which allowed them to order anything up to $8. (*Id.* at 67); (Doc. No. 116-13, Ex. J at 113). If an employee ordered anything that cost more than $8, the employee would have to pay the difference. (Doc. No. 116-13, Ex. J at 113). A prorated meal credit of up to $10 for 40 hours worked would be applied to the gross weekly pay of each tipped employee. (Doc. No. 105, Pls' SMF at ¶ 47); (Doc. No. 116, Def.'s SMF at ¶ 47).

### b. Procedural History

On April 14, 2016, Casco brought this action (which Blemings subsequently joined) on behalf of a nationwide collective class action under the Fair Labor Standards Act ("FLSA"). (Doc. No. 1). Casco also brought a class action under Federal Rule of Civil Procedure 23 on behalf of himself and a New Jersey class of tipped employees (*Id.*). The Complaint contains five counts: (1) FLSA minimum wage violations (Count One); (2) FLSA overtime wage violations (Count Two); (3) New Jersey minimum wage violations (Count Three); (4) New Jersey overtime violations (Count Four); and (5) a New Jersey common law unjust enrichment claim (Count

Five). (*Id.*). In answering the Complaint, Defendants denied, among other things, that they failed to pay their tipped employees less than the minimum wage. (Doc. No. 9 at ¶¶ 81–88).

Plaintiffs sought summary judgment under the FLSA and NJWHL as to the defense that Defendants complied with the legal notification requirements to pay their tipped employees less than the minimum wage by claiming a tip credit. (Doc. No. 77). In our prior opinion, we held that Defendants failed to meet the notification requirement to take a tip credit under the FLSA and therefore found Defendants liable for the full minimum wage. (Doc. No. 94). We granted summary judgment in favor of Plaintiffs solely on that issue. (*Id.*). We denied Plaintiffs' motion for summary judgment on the NJWHL claim because it was unclear, given the lack of briefing, whether the FLSA and NJWHL paralleled each other to such an extent that a ruling under one was dispositive of a ruling under the other. (*Id.*). Plaintiffs then moved for partial summary judgment on the NJWHL claim. (Doc. No. 104). They also filed a motion for final collective action pursuant to 216(b) of the FLSA and a motion to strike Defendants' response to Plaintiffs' statement of material facts. (Doc. No. 109, 124).

On March 9, 2021, the Court issued an Opinion and Order granting Plaintiffs' motion for partial summary judgment. (Doc. No. 158, Op.); (Doc. No. 159, Order). In our Opinion, we held that there was no genuine issue of material fact as to whether Defendants illegally adjusted employees' tips to meet the minimum wage requirement when tipped employees reported zero cash tips. (Doc. No. 158 at 11–13). Therefore, we granted Plaintiffs' motion for summary judgment on the narrow point that Defendants failed to comply with the requirements set forth in N.J.A.C. 12:56–14.4 when waiters and waitresses reported cash tips as zero. (*Id.* at 13).

Additionally, the Court concluded that Defendants took an impermissible meal credit because the meal credit that was applied toward employees' wages was priced at a higher rate

than what it actually cost Defendants. (*Id.* at 15). Accordingly, we held that Plaintiffs are entitled to summary judgment on this issue as well. (*Id.*). We also granted Plaintiffs' motion for final collective action because we found that Casco and the opt-in plaintiffs are "similarly situated" for FLSA purposes. (*Id.* at 19). Lastly, we denied Plaintiffs' motion to strike because there was no indication of bad faith on the part of Defendants. (*Id.* at 8). Then on March 23, 2021, Plaintiffs filed the present motion, seeking reconsideration of the Court's order and opinion. (Doc. No. 160, Mot. for Recons.).

## II.   LEGAL STANDARD

### a.   Motion for Reconsideration

Motions for reconsideration are governed by Local Civil Rule 7.1(i), which allows a party to seek reconsideration by the Court in matters in which the party believes the judge has "overlooked." *See Carney v. Pennsauken Twp. Police Dep't*, Civ. No. 11–7366, 2013 WL 4501454, at *1 (D.N.J. Aug. 21, 2013) (citations omitted). "The standard for reargument is high and reconsideration is to be granted only sparingly." *Yarrell v. Bartkowski*, No. 10–5337, 2012 WL 1600316, at *3 (D.N.J. May 7, 2012). To be successful on a motion for reconsideration, a petitioner has the burden to demonstrate: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex. rel. Lou–Ann v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "The word 'overlooked' is the operative term in the Rule." *Bowers v. NCAA*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001). The Court will grant a motion for reconsideration only where it overlooked a factual or legal issue that may alter the disposition of the matter. *See United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999); L. Civ. R. 7.1(i).

**III.   DISCUSSION**

Plaintiffs are requesting the Court reconsider its decision limiting summary judgment to the narrow circumstance where zero cash tips were reported by Defendants' tipped employees. Plaintiffs argue the Court overlooked facts in the record showing that Defendants' improper adjustment of reported cash tips was not limited to only those instances where employees reported zero cash tips. Plaintiffs further insist that this limitation will result in manifest injustice to those employees who did not report their own tips but were still underpaid as a result of Defendants' illegal conduct.

    **a.   The Court's Consideration of Cash Tips Reported by Waitresses and Waiters**

In a motion for reconsideration, parties should not restate arguments which the Court has already considered. *Yurecko v. Port Auth. Trans-Hudson Corp.*, 279 F. Supp. 2d 606, 609 (D.N.J. 2003). "[T]he motion may address only 'dispositive factual matters or controlling decisions of law' that were presented to, but not considered by, the court in the course of making the decision at issue." *Id.* (quoting *Resorts Int'l, Inc. v. Greate Bay Hotel and Casino, Inc.*, 830 F.Supp. 826, 831 (D.N.J.1992)).

In an attempt to fit this motion into these required parameters, Plaintiffs claim that the Court failed to consider their assertion that Defendants had impermissibly altered the cash tips reported by its tipped employees "when any servers reported that they had received *little to no cash tips*." (Doc. No. 160 at 3). We disagree.

In rendering our decision to limit summary judgment to the narrow circumstance where zero cash tips were reported, we undoubtedly considered the instances where waiters and

waitresses did in fact report cash tips. In doing so—and as required under the summary judgment standard—the Court construed "[a]ll facts and inferences . . . in the light most favorable to the non-moving party." *Boyle v. Cnty. Of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Specifically, we construed the following testimony provided by Mr. Kolovos in the light most favorable to Defendants:

> Counsel: Now, it says that she had $1,337.07 in gross receipts for food and beverage; do you see that?
>
> Mr. Kolovos: Yep.
>
> Counsel: And she had zero percent total tips?
>
> Mr. Kolovos: that's 'cause she didn't declare anything.
>
> Counsel: But the $41 –
>
> Mr. Kolovos: She did get $41 in – it appears in credit card tips that we paid her.
>
> Mr. Kolovos: But, again, see how this is difficult for me to police and say, hey, you didn't make any other tips, it's highly unlikely.
>
> Counsel: What does Mr. Fakouras do with the information in this document?
>
> Mr. Kolovos: Well some – some employees or wait staff, as you can see, do report their tips or what appears to be, you know, their tips. *So he utilizes what they've—what tips they report here.* If it is zero, for example, which is unreasonable, well, then, we – as indicated in the notice, the minimum—the minimum as put in.
> Counsel: And by the minimum – I'm sorry?
>
> Mr. Kolovos: as it indicated in the document, unless were told otherwise, we gonna at least take this tip credit.

(Doc. No. 116–13, Ex. J at 95–96). While Mr. Kolovos clearly admits to changing the gratuities received by Defendants' employees when those employees recorded zero tips, the italicized quote, "he utilizes what they've – what tips they report here," suggests that Defendants relied on waitresses and waiters' reports when they reported an amount other than zero. (Doc. No. 156 at 12–13). As we further explained—although the sentence is ambiguous, drawing all reasonable

8

inferences in favor of the nonmoving party, we construe it as referring to cash tips. (*Id.*). Accordingly, we reject Plaintiffs' argument that the Court failed to consider their assertion that Defendants had impermissibly altered the cash tips even when Defendants' tipped employees reported an amount other than zero.

### b. Tipped Employees Who Do Not Report Their Own Tips

We recognize that the Court's decision to limit the grant of summary judgment to instances in which waiters and waitresses reported zero cash tips consequently excludes bussers who did not report their own cash tips. And it is this limitation of Defendants' liability under the NJWHL upon which Plaintiffs base their motion for reconsideration. Yet, absent from Plaintiffs' Opening Memorandum supporting their Motion for Partial Summary Judgment ("Opening Memorandum") was any argument pertaining to Casco's "incredibly" consistent hourly rate—evidence that Plaintiffs heavily rely on to support the conclusion that Defendants' illegal adjustment of cash tips was not limited to only those instances where zero cash tips were reported by waiters and waitresses.

In a footnote included in Plaintiffs' Opening Memorandum, Plaintiffs did seemingly attempt to incorporate the background and relevant facts that were previously detailed in their Opening Memorandum supporting their First Motion for Summary Judgment:

> The background and relevant facts of this litigation were fully detailed by Plaintiffs in their Memorandum supporting their Motion for Summary Judgment (Doc. No. 77). In an effort to streamline this submission and avoid redundancy, Plaintiffs incorporate that document by reference and, accordingly, refer the Court to that document to the extent necessary.

(Doc. No. 105 at 2). However, even if we were to construe this as incorporating Plaintiffs' previous arguments, which we did not, it would have been waived. *United States v. Kellam*, 751

F. App'x 184, 192 n.4 (3d Cir. 2018) (concluding issue was waived because a one-sentence footnote was insufficient to raise it in an opening brief)).

It was not until Plaintiffs' Reply Memorandum supporting their Motion for Partial Summary Judgment ("Reply Memorandum"), where Plaintiffs raise the argument that Casco's tips—which were based on a percentage of gross sales—were clearly manipulated by Defendant for every hour Casco ever worked. (Doc. No. 123 at 3). But it is also "well-established that a party cannot raise an argument for the first time in a reply brief." *Maliandi v. Montclair State Univ.*, Civ. No. 14-1398, 2017 WL 935160, at *5 (D.N.J. Mar. 9, 2017), aff'd, 2017 WL 3023205 (D.N.J. July 17, 2017) (declining to consider a party's argument when the argument was raised for the first time in a reply brief); *see also Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (finding that "[a]n issue is waived unless a party raises it in its opening brief," and finding "a passing reference to an issue" to be insufficient).

Because Plaintiffs' argument alluding to Casco's identical tip amounts despite the variation in Defendants' gross sales was only reestablished in Plaintiffs' Reply Memorandum and, at best, vaguely referenced in a footnote in Plaintiffs' Opening Memorandum, this issue was waived.

    c.  **The Manifest Injustice Standard**

For the Court to reconsider a decision due to manifest injustice, the record presented must be "so patently unfair and tainted that the error is manifestly clear to all who view [it.]" *Campbell v. New Jersey*, No. CV 16-3086, 2017 WL 5593778, at *6 (D.N.J. Nov. 21, 2017) (quoting *Conway v. A.I. Dupont Hosp. for Children*, No. 04-4862, 2009 WL 1492178, at *6 (E.D. Pa. May 26, 2009)). Furthermore, "it is not the job of courts deciding a motion for

reconsideration to rescue parties from their strategic litigation choices . . . (nor) rescue parties from their own errors." *Conway*, 2009 WL 1492178, at *7.

As we have established above, the Court did not overlook evidence in the record. Rather, it was Plaintiffs' own mistake of omitting arguments in their Opening Memorandum that could have possibly justified a broader grant of summary judgement. Consequently, we reject Plaintiffs' argument that our limited grant of summary judgment would result in manifest injustice.

## IV.    CONCLUSION

For the reasons expressed above, the Motion for Reconsideration is **DENIED**. An accompanying Order will issue.

Dated: 7/23/2021                                                                                          s/Robert B. Kugler
                                                                                                          ROBERT B. KUGLER
                                                                                                          United States District Judge